POLANCO, PLAINTIFF AND APPELLANT, v. SOCIETÉ ANONYME DES SUCRERIES DE SAINT JEAN, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Humacao in an Action of Debt, Etc.

No. 2766.—Decided May 31, 1924.

CONTRACT—AGRICULTURAL CONTRACT.—In this case the plaintiff entered into a contract with the defendant for the cultivation and grinding of sugar cane and agreed to plant and cultivate 250 acres of cane during the seasons of 1913, 1914, 1915, 1916 and 1917, to be ground by the defendant, who agreed to pay him six per cent of the converted cane, or the highest price paid during the life of the contract to any other planter. *Held:* That it having been proved that the defendant paid a higher price to other planters, the plaintiff was entitled to such increase, whether or not the contracts of the favored planters contained stipulations different from those of the plaintiff's contract, and that it could not be considered that the plaintiff failed to perform his contract because in some instances he failed to produce fifteen tons of cane per acre, for it was sufficient to prove that he cultivated 250 acres of land from one year to another.

The facts are stated in the opinion.

*Messrs. Sarmiento & Puig* for the plaintiff-appellant.

*Mr. H. G. Molina* for the defendant-appellant.

MR. JUSTICE WOLF delivered the opinion of the court.

On the 11th of April, 1912, José Nicolás Polanco made an agreement with the defendant corporation to till 250 acres of cane for the harvests of 1913, 1914, 1915, 1916 and 1917, and to deliver the product for grinding to said defendant. The latter made a reciprocal agreement to de-

liver to Polanco six per cent of the ground-out sugar. The suit turns on a special-benefit clause of the contract as follows: "The Santa Juana mill, during the existence of this contract agrees to pay Polanco at the same rate as is paid to any other of the mill's planters (*colonos*)." The unquestioned meaning of this phrase, something like a favored nation clause, was that Polanco should receive for cane delivered to the mill as high a price as was received by any other planter. There was undisputed evidence tending to show that in 1913 and 1914 one of the mill's planters received six and one-half per cent of sugar and that in 1916 and 1917 one or perhaps two planters received seven per cent of sugar. On cross-examination a planter receiving seven per cent said that one-half of one per cent was for transportation from a distance, but another planter received seven per cent outright. Some further claim was made by Polanco, but the finding of the court and the evidence itself is against such a claim. There was evidence showing the value of the cane delivered by Polanco. The court, however, held that Polanco had no right to the extra price because he had failed to comply with the principal contract and also the court suggested that it was not satisfied that the payments to the other planters were not made under conditions different from those of the contract of Polanco. The court rendered judgment against Polanco and also rendered judgment against the defendant on a cross-complaint filed by it. Each of the parties has appealed.

As a prima facie case there was unquestioned evidence of the payment of higher prices to other planters. The witnesses are not attacked. There is no countervailing evidence. The court merely queried whether there was an absolute parity as between the contract of the complainant with the mill and with the same mill and the other planters. Likewise, we are in exactly the same situation as was the court below to weigh the evidence. The evidence was heard

by one judge, who resigned from office before the typewritten record was filed and by stipulation the case was submitted to the incoming judge on the pleadings, documents and typewritten evidence on file. We have no question that the complainant made out a prima facie case of higher payment to other planters during the existence of the contract.

The principal defense is that the complainant failed to perform his part of the contract and hence cannot demand performance of the special-benefit clause. The court says Polanco was under an obligation to "deliver" two hundred and fifty acres of cane each year by reason of the contract of April 11th, 1912, and that he did not do so, and that the intention of the parties was that the special-benefit clause was only applicable in case of performance.

Exactly what is meant by the "delivery" of 250 acres of cane, we have been unable to understand. The contract calls upon Polanco to sow, plant and cultivate 250 acres of land. Somewhat as if it were an implied term in the contract, reference is made by the court and the appellee mill to the necessity of raising fifteen tons per acre, but there is no such condition or mention in the contract. What the court said was that the evidence tended to show that an acre in the region in question, duly cultivated, should produce fifteen tons of cane. There was no satisfactory evidence of such a general condition if a like matter could arise on a farm, or between these parties, and the contract is silent on the amount of cane to be produced. All that the complainant would have to show is that he did from year to year cultivate substantially 250 acres of land and this the evidence tends to prove to our satisfaction.

The evidence of Polanco as to the year 1915 was accepted and confirmed by the mill. The parties agreed that cultivation should be practically abandoned for that year.

Likewise the mill agrees that Polanco cultivated 250 acres in 1913. The principal contention is that Polanco was about

one hundred acres short in 1914. Polanco testified that he cultivated 250 acres in that year. He was called to the witness stand twice. In his first testimony he was concerned principally in showing the liquidations that he had made with the company, prices and amount of cane delivered. When the complainant by another witness offered to corroborate himself as to the amount of cane delivered, the defendant objected that it was not proper rebuttal and for the further reason that the defendant had accepted the testimony of Polanco as to the number of acres delivered. Thereafter Polanco testified that he had cultivated 250 acres in 1914 and with new seed (*plantillas*). Now, while this subsequent testimony is not vouched for as was the former, we find no reason to doubt it and we are satisfied that the whole evidence shows a substantial compliance with the contract.

Polanco was also under contract to cultivate another 100 acres and the record and the admitted evidence of Polanco explain the disposition of these one hundred acres. Some time after the harvesting of the crop of 1914 the mill wrote to Polanco complaining that from a planting of 345 acres there was a yield on the average of only five tons per acre. This number of 345 is approximately 250 and 100 and would seem to be an admission that Polanco had the necessary two hundred and fifty under cultivation (pp. 56 and 57). Part of the controversy was waged over the fact that in 1914 Polanco did not abandon the acreage that produced less than 18 tons per acre. His contract, however, makes it clear that such abandoning was only obligatory after the second cutting. The mill does not question that in 1916 and 1917 Polanco had the necessary two hundred and fifty acres under cultivation. It was the yield of 1914, it seems to us, that made the mill challenge the planting of that year. We agree with the court that the 25 cents extra paid in 1917 or 1918 was not available to Polanco.

There are some essentially important considerations that,

to our minds, dispose of the whole case. Each year or oftener the mill made liquidations with Polanco and it paid him the price stipulated in the contract. At no time did it question his plantings other than by the letter of 1914 to which we have referred, and that was written under a misapprehension of the terms of the original contract. The company received the cane, accepted it practically without demur, and was bound for the price. The price was not only the 6 per cent agreed upon in the original contract, but the price that should be paid to any other planter. We see no difference in this and the acceptance by a merchant of a smaller quantity of goods than ordered, even supposing that Polanco did in fact cultivate less than the amount of cane agreed upon.

We have, however, reviewed the evidence also because part of the counter-claim is based on the failure of Polanco to live up to his contract. Some of the foregoing considerations showing fulfilment dispose of this part of the counter-claim. The court found no proof of damages to support the counter-claim, but we base our decision on performance by Polanco. If any doubt remained the liquidations put a finish to all this kind of counter-claim. Reverting to the matter of benefits, the fact that Polanco from year to year made no claim of extra price would scarcely be a waiver, as there is no satisfactory evidence that he knew of the settlements made to other planters until after the liquidations, with the exception of the one for 1917 and the liquidation for that year he refused to sign. The complaint said that Polanco was ignorant of these higher settlements up to a month or two before suit began, but the evidence showed knowledge in October, 1916. The settlement for that year was made in July. The complainant asked leave to amend in this regard, and while it does not appear that the request was acted upon, the variance in any event was not fatal. We question, too, without definitely

deciding, whether a previous knowledge would have been a waiver.

As part of its cross-complaint or reconvention the defendant also set up the delivery and use by Polanco of certain oxen belonging to the defendant, as well as the averment that the oxen were mishandled and that some of them died. We are satisfied with the court below that the use of these oxen was not the object of any contract and was a mere gratuitous act on the part of the defendant to help itself and Polanco to the making of the crop. This gratuitous act was similar to some of the allowances made to other planters to help them transport their cane and which allowances for such a purpose the court below refused to consider as a benefit within the letter or spirit of the aforesaid special-benefit clause.

The benefits for the years 1913, 1914, 1916 and 1917 summed up in the brief of appellant, amount to $9,196.48 and these amounts agree with the testimony of Polanco, which seems to be unquestioned in this regard.

In reversing this judgment, following the general rule we impose no costs against the defendant, especially as the defense was not without some merit and the defendant defeated some of the claims of the complainant and the complainant had to amend several matters at the trial and attempted other amendments.

The judgment must be reversed and another rendered in favor of Polanco in the sum of $9,196.48 with interest thereon at 6 per cent from September 21, 1917, the date of the complaint, and otherwise affirmed.

*Reversed in part.*

Chief Justice Del Toro and Justices Aldrey, Hutchison and Franco Soto concurred.

### ON RECONSIDERATION.

On August 1, 1924, MR. JUSTICE WOLF delivered the following opinion of the court:

Counsel now says that in his original brief he did not attempt to answer the calculations made by Polanco because he considered either the calculations or the claim frivolous. Then counsel assumes that this court accepted the calculations of counsel for Polanco without an examination of the record. This is a clear mistake. We carefully verified the statements made by Polanco in the record where he successively showed that the four items of his claim were $556.20; $459.71; $5,999.54, and $2,181.03. Indeed, in one place he reduced his claim from $2,174.19 to $459.71 and obtained leave to amend his complaint in this regard. These calculations are all made in Polanco's testimony after the introduction of the alleged circular letter from the mill. Our opinion states that the figures made by appellant agreed with his testimony. However, the court would have been justified in accepting the conclusions or calculations of Polanco made in the brief in the absence of an attack.

Appellee was apparently so confident of its counter-claim, or of the lack of performance on the part of Polanco, as the case may be, that it did not originally attempt to meet the base or bases on which the claim was made. Appellee insists in its motion that the contract rate agreed to be paid Polanco was 6¼ instead of 6. It would seem that in this regard the record was not examined with care. At the foot of the contract of April 11, 1912, is a note which explains that of the 6¼ mentioned in the contract six was payment of the cane and one-quarter for expenses. The answer of the defendant admits this specifically as follows:

"That in the two contracts mentioned the defendant agreed to deliver to the plaintiff in payment of each hundredweight of cane he might receive, six pounds of sugar, and also, in order to help defray the cost of transportation of the cane, a quarter of a pound of sugar likewise for each hundredweight of cane."

In considering the benefits obtained by other planters we, and apparently the court below, excluded the pounds or

percentages paid to other planters which were an allowance for extra expenses or extra distances and not the price of the cane itself. This our opinion also shows. We were a little doubtful whether both Cabezudo and Manrique obtained 7 per cent for the cane delivered both in 1916 and 1917, but we think now that both did. We cannot see that it makes any difference that Manrique received one-half per cent because he borrowed no cash. Where planters do borrow they usually pay a *quid pro quo* in interest. It was, however, only necessary for Polanco to prove that one of them received 7 per cent. The basis of comparison is the price paid for the cane excluding the extra allowance made either to Polanco or to the other planters.

It is unnecessary therefore to help analyze in detail the various calculations made by appellee. For example, appellee now attempts to show that calculating the benefits for the year 1913, Polanco, at the rate of one-fourth, would only have been entitled to $263.55. At one-half which is the correct benefit, then Polanco would have been entitled to $527.16 instead of the $556.20 which he claimed. Appellee bases his calculation on certain alleged averages of price for the year 1913. Polanco apparently did not take averages, but calculated on each delivery. As this calculation was unchallenged in the brief and not clearly challenged for this purpose at the trial, we think it is too late to attempt to correct any possible error of calculation made by the witness by a motion to reconsider.

We are at a loss to understand why a claim of this kind should be considered frivolous unless appellee meant that it was fully satisfied of non-performance by Polanco. The mill clearly paid others something more than it paid Polanco. The said defendant took it upon itself to determine whether Polanco was entitled to a benefit or not for reasons other than those expressed in the contract. At no time did the mill give Polanco an opportunity to present a claim for said benefits. As we have intimated, the mill seemed to

think that advances were sufficient excuse for non-paying benefits. But then, as appellant maintained, the benefit clause would be meaningless.

One of the reasons for reconsideration is that we held that Polanco was only obliged to till 250 acres of cane and as we read it, that is what the contract says. At the risk of repeating ourselves, we may say that while the mill may have thought or desired that Polanco should cultivate 15 or 18 tons per acre the contract does not say so. We find nothing in the testimony of defendant's witness Wittemans that would show an understanding or agreement to produce 15 or 18 tons per acre.

As to the question of performance, we are satisfied in the first place that the letter from the mill referring to the 345 acres was not merely a circular. It took into exact account the condition of Polanco's cultivation and urged him to further efforts. We are quite agreed that the appellee never perhaps in so many words authorized Polanco to abandon any part of the cultivation, but we are satisfied that the mill tacitly assented to any default when it made its several liquidations, when it wrote the letter, and when it exercised the general superintendence that the record shows.

We said that we were disposed to believe the statements of Polanco as to performance particularly because his statements as to amounts delivered were accepted. The appellee would like us to confront his statements with those of its manager Wittemans. In general, Polanco struck us as knowing his own affairs better than anyone else. His honesty not being questioned, he is much more likely to be right than Wittemans. The whole record convinces us that there was either a full performance by Polanco or a waiver by the mill and that the counter-claim would have been inconceivable as an independent action if Polanco had not insisted on his contract rights for benefits.